EXHIBIT A

# POST-PETITION LOAN AND SECURITY AGREEMENT

THIS **POST-PETITION LOAN AND SECURITY AGREEMENT** (this "Agreement") is made on March 31, 2015, by and among **THE HEALTHY BACK STORE, LLC** ("Healthy Back"), a Delaware limited liability company, as debtor and debtor-in-possession ("Borrower"), and **HEALTHY BACK BRAND HOLDINGS, LLC** ("Lender").

### Recitals:

Borrower is the debtor-in-possession under Chapter 11 of the Bankruptcy Code in case number 15-    (the "Chapter 11 Case") pending in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division (together with any other court having jurisdiction over the Chapter 11 Case or any proceedings therein from time to time, the "Court"). Borrower has requested that Lender extend financing to Borrower in connection with the Chapter 11 case in accordance with the provisions of this Agreement.

Lender is willing to make loans and other extensions of credit to Borrower, subject to the terms and conditions of this Agreement and subject to the terms and conditions set forth in orders of the Court approving the proposed financing.

### Agreement:

NOW, THEREFORE, for Ten Dollars ($10.00) and other good and valuable consideration, receipt of which is acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

## SECTION 1. DIP FACILITY

Subject to the terms and conditions of, and in reliance upon the representations and warranties made in, this Agreement and the other Loan Documents, Lender agrees, to the extent and in the manner hereinafter set forth, to establish the DIP Facility and to make loans available to Borrower as follows:

**1.1.** **Credit Facility.** Lender agrees to make available to Borrower advances under the DIP Facility upon Borrower's request from time to time during the Term, provided that, prior to the entry of the Final Financing Order, the sum of the total outstanding Advances shall not exceed $150,000.00 and the sum of the total DIP Facility shall not exceed the aggregate amount of $400,000.00 at any given time. The DIP Facility is a revolving credit facility, which may be drawn, repaid and redrawn, from time to time as permitted under this Agreement and the Financing Orders. Lender's obligation to fund any Loan shall also be subject to satisfaction of each of the conditions precedent set forth in **Section 8**. Each Loan shall bear interest as set forth in this Agreement and shall be repaid in accordance with the terms of this Agreement.

**1.2** **Use of Proceeds.** The proceeds of the Loans shall be used by Borrower during the pendency of the Chapter 11 Case exclusively for one or more of the following purposes: (i) to pay expenses described (and in the amount provided for) in the Budget; (ii) to pay fees required to be paid to the office of the United States Trustee; and (iii) to pay other expenses authorized by the Court.

**1.3** **Promise to Pay.** Borrower hereby promises to repay to Lender the Loans and all interest, fees and other charges as provided herein.

## SECTION 2. INTEREST, FEES AND CHARGES

**2.1.** **Interest.** Borrower agrees to pay interest in respect of all unpaid principal amounts of the Loans from the respective dates such principal amounts are advanced until paid (whether at stated maturity, on acceleration or otherwise) at a rate per annum equal to five and one-half percent (5.5%).

**2.2.** **Computation of Interest and Fees.** Interest shall be calculated on a daily basis, commencing on the date hereof, and shall be payable monthly, in arrears, on the first day of each month. All interest, fees and other charges provided for in this Agreement shall be calculated daily and shall be computed on the actual number of days elapsed in a year of 360 days. Borrower acknowledge that the calculation of interest on the basis of a 360-day year, as opposed to a year of 365 days, results in a higher effective rate of interest hereunder. For purposes of computing interest hereunder, all Payment Items received by Lender shall be deemed applied by Lender on account of the Obligations (subject to Full Payment of such items) one Business Day after the Lender receives such items in immediately available funds in the Payment Account.

## SECTION 3. LOAN ADMINISTRATION

**3.1.** **Manner of Borrowing and Funding Loans.** Borrowings under the DIP Facility established pursuant to **Section 1** hereof shall be made and funded as follows:

    3.1.1. Notice of Borrowing.

    (i) Whenever Borrower desires to make a borrowing under this Agreement, Borrower shall give Lender prior notice (a "Notice of Borrowing"). Such Notice of Borrowing shall be given by Borrower no later than 11:00 a.m. at the office of Lender designated by Lender from time to time on the Business Day of the requested funding date of such borrowing. Notices received after 11:00 a.m. shall be deemed received on the next Business Day. Each Notice of borrowing (or telephonic notice thereof) shall be irrevocable and shall specify (a) the principal amount of the borrowing and (b) the date of borrowing (which shall be a Business Day).

    (ii) Unless payment is otherwise timely made by Borrower, the becoming due of any amount required to be paid under this Agreement or any of the other Loan Documents with respect to the Obligations (whether as principal, accrued interest, fees or other charges) shall be deemed irrevocably to be a request for Loans on the due date of, and in an

2

aggregate amount required to pay, such principal, accrued interest, fees or other charges and the proceeds of such Loans may be disbursed by way of direct payment of the relevant Obligation.

        3.1.2. **Disbursement Authorization.** Borrower irrevocably authorizes Lender to disburse the proceeds of each Loan requested, or deemed to be requested pursuant to Section 3.1.1, as follows: (i) the proceeds of each Loan requested under Section 3.1.1(i) shall be disbursed by Lender in accordance with the terms of the written disbursement letter from Borrower in the case of the initial borrowing, and, in the case of each subsequent borrowing, by wire transfer to such bank account as may be agreed upon by Borrower and Lender from time to time in writing; and (ii) the proceeds of each Loan requested under Section 3.1.1(ii) shall be disbursed by Lender by way of direct payment of the relevant interest or other Obligation. Any proceeds disbursed in payment of any of the Obligations shall be deemed to have been received by Borrower.

    **3.2.** **All Loans to Constitute One Obligation.** The Loans shall constitute one general Obligation of Borrower and shall be secured by Lender's Lien upon all of the Collateral.

## SECTION 4. PAYMENTS

    **4.1.** **General Payment Provisions.** All payments of principal of and interest on the Loans and other Obligations shall be paid to Lender in Dollars without any offset or counterclaim and free and clear of (and without deduction for) any present or future Taxes, and, with respect to payments made other than by application of balances in the Payment Account, in immediately available funds not later than the earliest of (i) acceleration of maturity of the Obligations upon the occurrence of an Event of Default; (ii) the Closing Date of any sale pursuant to Section 363 of the Bankruptcy Code; or (iii) June 15, 2015.

    **4.2.** **Repayment of Loans.**

        4.2.1. If the Lender is the successful bidder for the purchase of Borrower's assets, any outstanding amount owed under this DIP Facility shall be credited against the purchase price.

        4.2.2. If the Lender is not the successful bidder at any action on the sale of Debtor's assets, the sale proceeds shall be used to first repay all outstanding amounts owed under this Agreement.

## SECTION 5. DIP TERM AND TERMINATION OF DIP FACILITY

    **5.1.** **DIP Term.** Subject to Lender's right to cease making Loans to Borrower when any Default or any Event of Default exists or upon the DIP Facility Termination Date, the DIP Facility shall be in effect for the DIP Term. The DIP Term may be extended by written agreement between Borrower and Lender without further notice or hearing or order by the Court.

**5.2.   Termination of DIP Facility.**

5.2.1. <u>Termination by Lender</u>.  Lender may terminate the DIP Facility (and Lender's Commitment thereunder) at any time, without notice to Borrower, upon or after the occurrence of an Event of Default.

**SECTION 6. COLLATERAL SECURITY**

**6.1.   Grant of Security Interest in Collateral.**  To secure the prompt and Full Payment and performance of all of the Obligations, Borrower hereby grants to Lender a continuing security interest in and Lien upon, and hereby collaterally assigns to Lender, all of the following Property and interests in Property of Borrower, whether now owned or existing or hereafter created, acquired or arising (irrespective of whether the same existed on or was created or acquired after the Petition Date) (collectively, the "Collateral"):

(i)    all Accounts;

(ii)   all Inventory;

(iii)  all Equipment;

(iv)  all General Intangibles (including all Payment Intangibles);

(v)   all Instruments;

(vi)  all Chattel Paper;

(vii) all Documents;

(viii) all Investment Property;

(ix)  all Supporting Obligations;

(x)   all Letter-of-Credit Rights;

(xi)  all Deposit Accounts;

(xii) all Leasehold Interests;

(xiii) all cash and non-cash proceeds of (i) through (xii) above, including proceeds of and unearned premiums with respect to insurance policies insuring any of the Collateral; and

(xiv) all books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs, and other computer materials and records) of Borrower pertaining to any of (i) through (xiii) above.

**6.2. Lien Perfection; Further Assurances.** Promptly after Lender's request therefor, Borrower shall execute or cause to be executed and deliver to Lender (and consent to Lender's filing without Borrower's signature where permitted by Applicable Law) such instruments, mortgages, deeds of trust, security deeds, assignments, title certificates or other documents as are necessary under the UCC or other Applicable Law (including any motor vehicle certificates of title act) to perfect (or continue the perfection of) Lender's Lien upon the Collateral, and shall take such other action as may be requested by Lender to give effect to or carry out the intent and purposes of this Agreement. The parties agree that a carbon, photographic or other reproduction of this Agreement shall be sufficient as a financing statement and may be filed in any appropriate office in lieu thereof.

**6.3. Liens Under Financing Orders.** The Liens and security interests granted to Lender pursuant to the provisions of this **Section 6** and pursuant to any of the other Loan Documents shall be in addition to and cumulative with all Liens conferred upon Lender pursuant to the terms of the Financing Orders.

**6.4. Lien Priority.** The Liens and security interests granted to Lender pursuant to the provisions and pursuant to any of the Loan Documents shall be first priority Liens and security interests in the Collateral.

**SECTION 7. REPRESENTATIONS AND WARRANTIES**

**7.1. General Representations and Warranties.** To induce Lender to enter into this Agreement and to make available the DIP Facility, Borrower warrants and represents to Lender that:

7.1.1. Organization and Qualification. Borrower is a corporation duly organized, validly existing and in good standing under the laws of the state of its organization, has the power to own Properties and to transact the business in which it is presently engaged or proposed to be engaged and is duly qualified and in good standing in each jurisdiction in which it presently is, or proposes to be, engaged in business.

7.1.2. Power and Authority. The execution, delivery and performance by each Borrower of the Loan Documents are within such Borrower's corporate powers, has been duly authorized by all necessary or proper corporate action and, on the date of initial funding of Loans hereunder, will be authorized by the Interim Financing Order pursuant to Sections 363 and 364 of the Bankruptcy Code; are not in contravention of any provision of its own Organizational Documents; will not violate any Applicable Law (following entry of the Interim Financing Order); and does not require any Governmental approvals other than the entry by the Court of the Interim Financing Order and thereafter the Final Financing Order.

7.1.3. Priority of Liens. Upon entry of the Interim Financing Order, and thereafter upon entry of the Final Financing Order, the Liens granted pursuant to the Loan Documents constitute valid, enforceable, perfected and first priority Liens on the Collateral, except to the extent otherwise expressly provided in the Financing Orders.

5

## SECTION 8. CONDITIONS PRECEDENT

    8.1. **Conditions Precedent to Initial Credit Extensions.** Lender shall not be required to fund the initial Loans requested by Borrower, unless, on or before April 14, 2015, each of the following conditions has been and continues thereafter to be satisfied:

        8.1.1. The Interim Financing Order shall have been entered, shall be in full force and effect and shall not have been vacated, reversed, modified or stayed in any respect (and, if such Order is the subject of a pending appeal, no performance of any obligation of any party shall have been stayed pending such appeal).

        8.1.2. The Interim Financing Order provides that Lender has a first priority lien and security interest in the Collateral.

## SECTION 9. EVENTS OF DEFAULT; RIGHTS AND REMEDIES ON DEFAULT

    9.1. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default":

        9.1.1. Payment of Obligations. Borrower shall fail to pay (a) the principal of or accrued interest with respect to any Loan on the due date thereof (whether due at stated maturity, on demand, upon acceleration or otherwise) or (b) any of the other Obligations on the due date thereof (whether due at stated maturity, **on demand**, upon acceleration or otherwise).

        9.1.2. Certain Bankruptcy Events. Borrower shall fail to comply with any of the provisions of the Financing Orders; a trustee shall be appointed in the Chapter 11 Case; an examiner shall be appointed in the Chapter 11 Case with enlarged powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; the Chapter 11 Case shall be dismissed or converted to a case under Chapter 7 or a motion for any such dismissal or conversion shall be filed by the Borrower.

    9.2. **Acceleration of the Obligations.** Without in any way limiting the right of Lender to demand payment of any portion of the Obligations payable **on demand** in accordance with this Agreement, upon or at any time after the occurrence of an Event of Default as above provided, Lender may, in its discretion, (i) declare the principal of and any accrued interest on the Loans and all other Obligations owing under any of the Loan Documents to be, whereupon the same shall become, without further notice or demand (all of which notice and demand Borrower expressly waive), forthwith due and payable and Borrower shall forthwith pay to Lender the entire principal of and accrued and unpaid interest on the Loans and other Obligations plus reasonable attorneys' fees and expenses if such principal and interest are collected by or through an attorney-at-law; and (ii) terminate the DIP Facility.

    9.3. **Remedies.** Upon or at any time after the occurrence of an Event of Default, but subject at all times to any limitations in the Financing Orders, Lender may, in its discretion, exercise from time to time all rights and remedies available to Lender.

**SECTION 10.      MISCELLANEOUS**

**10.1. Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of Borrower, Lender and its respective successors and assigns, except that (i) Borrower shall not have the right to assign its rights or delegate performance of any of its obligations under any of the Loan Documents.

**10.2. Modification of Agreement.** This Agreement may not be modified, altered or amended, except by an agreement in writing signed by Borrower and Lender.

**10.3. Severability.** Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under Applicable Law, but if any provision of this Agreement shall be prohibited by or invalid under Applicable Law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**10.4. Cumulative Effect; Conflict of Terms.** To the fullest extent permitted by Applicable Law, the provisions of the Other Agreements and the Security Documents are hereby made cumulative with the provisions of this Agreement. Except as otherwise provided in any of the other Loan Documents by specific reference to the applicable provision of this Agreement, if any provision contained in this Agreement is in direct conflict with, or inconsistent with, any provision in any of the other Loan Documents, the provision contained in this Agreement shall govern and control.

**10.5. Execution in Counterparts.** This Agreement and any amendments hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.

**10.6. Lender's Consent.** Whenever Lender's consent is required to be obtained under this Agreement or any of the other Loan Documents as a condition to any action, inaction, condition or event, Lender shall be authorized to give or withhold its consent in its sole and absolute discretion and to condition its consent upon the giving of additional collateral security for the Obligations, the payment of money or any other matter.

**10.7. Entire Agreement.** This Agreement, together with all other instruments, agreements and certificates executed by the parties in connection therewith or with reference thereto, embody the entire understanding and agreement between the parties hereto and thereto with respect to the subject matter hereof and thereof and supersede all prior agreements, understandings and inducements, whether express or implied, oral or written.

**10.8. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year specified at the beginning of this Agreement.

BORROWER:

**THE HEALTHY BACK STORE, LLC**

By: Anthony A. Mazlish
Title: CEO

LENDER:

**HEALTHY BACK BRAND HOLDINGS, LLC**

By: Richard Williamson
Title: VICE-PRESIDENT

8