IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| IN RE: | ) |
| | ) |
| THE HEALTHY BACK STORE, LLC | )   Case No. 15-14653 WIL |
| | )   (Chapter 11) |
| Debtor | ) |

**EMERGENCY MOTION OF DEBTOR FOR ENTRY OF AN ORDER
DETERMINING ADEQUATE ASSURANCE OF PAYMENT
FOR FUTURE UTILITY SERVICES**

The Healthy Back Store, LLC (the "Debtor"), Debtor and Debtor-in-possession in the above-styled chapter 11 case, hereby moves this Court for an order under §§ 105(a) and 366 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, *et seq*. (the "Bankruptcy Code"): (i) determining that Debtor's Utility Companies (as defined below) are adequately assured of payment for future utility services for purposes of § 366(b) and (c)(2) of the Bankruptcy Code, and (ii) prohibiting the Debtor's Utility Company (as defined below) from altering, refusing or discontinuing services.

## Background

1. On April 1, 2015 (the "Petition Date"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor continues in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicate for the relief requested in this Motion is §§ 105(a) and 366 of the Bankruptcy Code.

**The Debtor's Business Operations**

5. Prior to the Petition Date, the Debtor operated nineteen (19) retail stores and three (3) warehouses in Maryland, Virginia, California, North Carolina, Florida, Colorado and Kentucky. The Debtor sells ergonomic mattresses, adjustable beds, office, lounge and massage chairs, seat lift chairs, comfort accessories and other furniture. Prior to the Petition Date, the Debtor closed nine (9) stores.

6. As of December 31, 2014, the Debtor had annual sales of approximately $19,000,000.00.

7. The precipitating events for this chapter 11 filing is a combination of economic factors, including lower than expected sales in a sluggish economy.

**The Debtor's Utility Companies**

8. In connection with the operation of its businesses and management of its properties, the Debtor obtains gas, electric, telephone, telecommunications, water and other similar utility services provided by several utility companies (each a "Utility Company" and collectively, the "Utility Companies") for services provided at the Debtor's retail locations and warehouses. Attached hereto as Exhibit A is a list of the Utility Companies (the "Utility Service List").[1]

9. The Debtor has an excellent prepetition payment history with each of the Utility Companies.[2] Furthermore, certain of the Utility Companies may already hold cash security deposits or other forms of security to insure that the Debtor will pay any future utility bills.

---

[1] The Debtor reserves all rights to argue that any entity listed on the Utility Service List is not a utility company for purposes of § 366 of the Bankruptcy Code, and to argue that any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtor notwithstanding the filing of this Chapter 11 case.

[2] The Debtor is not current with iCore, with which it has a payment plan that it is attempting to resolve with the provider.

**Relief Requested for Determination of Adequate Assurance of Future Payment**

10. The Debtor respectfully requests that the Court determine that the Debtor's Utility Companies are adequately assured of payment for future utility services by virtue of the Proposed Adequate Assurance (as defined below).

11. As mentioned above, certain of the Utility Companies may already hold cash security deposits or other forms of security to insure the Debtor will pay any future utility bills.

12. Furthermore, the Debtor proposes to provide a deposit equal to two (2) weeks of utility service (the "Adequate Assurance Deposit"), calculated as a historical average over the twelve (12) months immediately preceding the Petition Date, to all Utilities Companies, provided that (a) such Utility Company does not already hold a deposit equal to or greater than two (2) weeks of utility services, (b) if the Utility Company currently holds a deposit less than two (2) weeks of utility services, such Utility Company will not be entitled to hold a deposit greater than two (2) weeks of utility services as a result of receiving the Adequate Assurance Deposit, and (c) such Utility Company is not currently paid in advance for utility services (the "Conditions"). Debtor estimates that the Adequate Assurance Deposits will total $24,786.42.

13. The Debtor submits that the Adequate Assurance Deposits, in conjunction with the Debtor's ability to pay for future utility services in the ordinary course of business and/or any existing deposits already held by the Utility Companies (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies of payment for future utility services.

**Objections to Adequate Assurance Deposits**

14. Historically, Chapter 11 debtors were able, under § 366 of the Bankruptcy Code, to put the onus on utility providers to argue that whatever form of adequate assurance proposed

3

by the Debtor was insufficient. The modifications to § 366 of the Bankruptcy Code arguably shift the burden onto Debtor to provide adequate assurance that is satisfactory to the utility, and to seek court review if the utility provider does not accept the proposed adequate assurance. Under this reading of revised § 366, a Utility Company could, on the 29th day following the Petition Date, announce that the proposed adequate assurance is not acceptable, demand an extortionary deposit or repayment from the Debtor and threaten to terminate utility service the next day unless the demand was complied with. While the Debtor does not concede that this is a correct reading of revised § 366, the Debtor nonetheless believes it prudent to require Utility Companies to raise any objections to the Adequate Assurance Deposits so that such objections may be heard by the Court and so that the Court may enter an order prior to the running of the thirty (30) day period following the Petition Date.

## Basis for Relief

**I.     The Debtor's Utility Companies are Adequately Assured of Payment for Future Utility Services**

15.     The policy underlying § 366 of the Bankruptcy Code is to protect Debtor from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that Debtor will pay for postpetition services. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6306. In that regard, § 366 of the Bankruptcy Code provides as follows:

> (a)     Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b)     Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of

4

the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A)  For purposes of this subsection, the term "assurance of payment" means-

    (i)    a cash deposit;

    (ii)    a letter of credit;

    (iii)    a certificate of deposit;

    (iv)    a surety bond;

    (v)    a prepayment of utility consumption; or

    (vi)    another form of security that is mutually agreed on between the utility and the debtor or the trustee.

(B)  For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2)  Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B)  In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider-

    (i)    the absence of security before the date of the filing of the petition;

5

>> (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
>
>> (iii) the availability of an administrative expense priority.
>
> (4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

11 U.S.C. § 366.

16. Section 366(c) was enacted as part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") effective as of October 17, 2005. Section 366(c) provides clarity as to what constitutes assurance of payment and what factors must be excluded from a court's determination as to the adequacy of the assurance of payment. More specifically, § 366(c)(1) defines "assurance of payment" to mean certain specified forms of security, thereby limiting a court's discretion as to what constituted "other security" within the meaning of § 366(b). Further, § 366(c)(1)(B) affirmatively excludes from the definition of assurance of payment the availability of an administrative expense priority claim. In addition, § 366(c)(3)(B) provides that a court may not consider certain facts in making a determination as to the amount of assurance of payment that is adequate.[3] Thus, § 366(c)(3)(B) eliminates various factors from consideration that courts prior to the BAPCPA amendments had used to determine whether adequate assurance of payment had been provided.

17. While § 366(c) does clarify what constitutes assurance of payment and what can be considered in determining whether such assurance is adequate, it is important to recognize that Congress did not abrogate the fundamental premises of § 366(b) or the pertinent case law

---

[3] Section 366(c)(4) also permits a utility company to recover or offset against a prepetition security deposit without either notice or an order of the court.

construing that section when Congress enacted § 366(c). That is, § 366(c), like § 366(b), provides that the Court is free to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. While § 366(c)(3)(B) does prevent a court from considering certain facts that courts had considered in determining adequate assurance of payment under § 366(b), <u>§ 366(c) continues to permit a court to determine that the amount of adequate assurance of payment is zero</u>. Under § 366(b), courts had discretion to make such a ruling and frequently did so. *See Virginia Elec. & Power Co. v. Caldor, Inc. – N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the Appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'") Accordingly, the Court can determine that the amount of assurance that is adequate is zero dollars or some other nominal amount.

18. In addition, Congress has not changed the requirement that the assurance of payment only be "adequate." Courts construing § 366(b) of the Bankruptcy Code have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Caldor, Inc. – N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc. – N.Y.*, 117 F.3d 646 (2d Cir. 1997); *Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment

is not, however, absolute assurance…all §366(b) requires is that a utility be protected from an unreasonable risk of non-payment").

19. Furthermore, courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (emphasis in original); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (upholding lower court's decision not to require debtor to provide utility deposits under Bankruptcy Act where "the likelihood [was] great that the posting of large deposits with all concerned public utilities would jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

20. By providing the Utility Companies with the Proposed Adequate Assurance under the circumstances of this case, the Utility Companies will be adequately assured of payment.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto (i) determining the Debtor's Utility Companies are adequately assured of payment for future utility services for purposes of § 366(b) and (c)(2) of the Bankruptcy Code, (ii) prohibiting the Debtor's Utility Companies from altering, refusing, or discontinuing services, and (iii) granting such other and further relief as the Court deems proper.

          Respectfully submitted,

          **SHULMAN, ROGERS, GANDAL,**
          **PORDY & ECKER, P.A.**

By:   /s/ Michael J. Lichtenstein
       Michael J. Lichtenstein (Bar No. 05604)
       Amy M. Simon (Bar No. 30188)
       12505 Park Potomac Avenue, Sixth Floor
       Potomac, Maryland 20854
       TEL:  (301) 230-5231 (Lichtenstein)
               (301) 945-9238 (Simon)
       FAX:  (301) 230-2891
       Email:  mjl@shulmanroges.com
                asimon@shulmanrogers.com

       *Attorneys for Debtor*

Dated: April 2, 2015

5434376_1.doc