EXHIBIT A

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this **"Agreement"**) is made and entered into as of this _3/ʳ_ day of March, 2015, by and between **The Healthy Back Store, LLC**, a Delaware limited liability company (the "**Seller**"), and **Healthy Back Brand Holdings, LLC**, a Delaware limited liability company (the "**Buyer**").  The Seller anticipates filing a bankruptcy petition and becoming a Debtor and Debtor in Possession in the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**").

## RECITALS

A.     Seller is engaged in the business of owning, managing and operating the specialty retail stores set forth on **Schedule A** annexed hereto (the "**Facilities**") and a related web site (such business is referred to herein as the **"Business"**).

B.     Seller wishes to sell to Buyer, pursuant to Section 363 of Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**), substantially all of the assets used in connection with and arising out of the operation of the Business at the price and on the other terms and conditions specified in detail below and Buyer wishes to so purchase and acquire such assets from Seller.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     Transfer of Assets.

1.1     Purchase and Sale of Assets.  On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, such Seller's right, title and interest in the following assets and to all assets used in connection with the Business, including without limitation the following assets (collectively, the **"Property"**):

1.1.1     Leases.  The real property leases described on **Schedule 1.1.1** attached to this Agreement and incorporated herein by reference (the **"Real Property Leases"**); the property leased pursuant to such Real Property Leases (the **"Leased Real Property"**); and all improvements, and appurtenances to such improvements, located on the Leased Real Property, including all store fixtures and displays (collectively, the **"Leasehold Improvements"**).

1.1.2     The equipment, personal property (excluding the Seller's cash) security deposits in connection with the Assumed Liabilities and intangible property leases, rental agreements, licenses, contracts, notes, agreements and similar arrangements described on **Schedule 1.1.2** attached to this Agreement and incorporated herein by reference (collectively, the **"Other Leases and Contracts"**).

1.1.3     Personal Property.  All other tangible personal property now or hereafter owned by Seller and used in connection with the Business, including, without limitation, all such furniture, vehicles, machinery, equipment, tools, spare parts, computers, fixtures and furnishings located at or on the Leased Real Property (collectively, the **"Personal Property"**).  The Personal Property shall exclude any vehicles, equipment or other tangible property held by Seller pursuant to a lease, rental agreement, contract, license or similar arrangement (a **"Contract"**) where Buyer does not assume the underlying Contract relating to such personal property at the Closing.

1.1.4     Intangible Property.  All intangible personal property owned or held by Seller and used in connection with the Business, together with all books, records and like items pertaining to the Facilities, including, without limitation the name "Healthy Back" and all other tradenames, the goodwill of the Business related to the Facilities, patents, processes, trademarks, trade names, service marks, websites, URL's, catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, advertising materials, software programs, and telephone numbers and any investments of Seller in any other entity (collectively, the **"Intangible Property"**).  As used in this Agreement, Intangible Property shall in all events exclude any software held by Seller pursuant to a license or other Contract where Buyer does not assume the underlying Contract relating to such intangible personal property at the Closing.

1.1.5     Inventory.  All inventory and stock in trade owned, including all floor samples and display samples, all spare parts and all supplies, held by Seller (collectively, the **"Inventory"**).

1.1.6     Governmental Permits.  To the extent transferable and assignable, all of Seller's respective interests in all licenses, certificates of occupancy, permits, registrations, approvals, licenses, easements, authorizations and operating rights relating to any of the Facilities or the Business issued or granted by third party or any governmental authority having jurisdiction over any of the Facilities.

1.1.7     Subsidiaries.  All of the outstanding capital stock of, or other ownership interest in, any subsidiaries owned by Seller, including Svago Marketing, LLC and New England Investments, LLC.

1.2     Excluded Assets.  Notwithstanding anything to the contrary in this Agreement, the Property shall exclude all of the following (collectively, the **"Excluded Assets"**):  (i) those items specifically excluded pursuant to the provisions of Section 1.1 above; (ii)  Seller's rights under this Agreement and all consideration payable or deliverable to the Seller pursuant to the terms and provisions hereof; (iii) insurance proceeds, claims and causes of action with respect to or arising in connection with any Contract which is not assigned to Buyer at the Closing; (iv) any real property lease, other lease, or other contract to which Seller is a party which is not listed or described on **Schedule 1.1.1** or **Schedule 1.1.2** (collectively, **"Excluded Contracts"**), (v)  all rights and claims in or to any refunds or credits of or with respect to any taxes, assessments or similar charges paid by or on behalf of Seller, in each case to the extent applicable to any period prior to the Closing; (vi) tax records, minute books, stock transfer books and corporate seals of Seller; (vii) all suits, rights, claims, choses in action and causes of action

of Seller against any third party, including any current or former officers, directors, employees, members, principals, agents, and representatives of Seller, and (viii) all preference or avoidance claims and actions of the Seller, including, without limitation, any such claims and actions arising under Chapter 5 of the Bankruptcy Code.

      1.3    <u>Instruments of Transfer</u>.  The sale, assignment, transfer, conveyance and delivery of the Property to Buyer shall be made by assignments, bill of sale, and other instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Buyer to transfer, convey, assign and deliver the Property to Buyer.

      2.    <u>Consideration</u>.

      2.1    <u>Purchase Price</u>.

      2.1.1    The purchase price to be paid by Buyer to Seller for the Property shall be the sum of Three Million Five Hundred Sixty Two Thousand One Hundred Two Dollars ($3,562,102.00) (the **"Purchase Price"**), including cash consideration in an amount equal to Two Hundred Thousand Dollars ($200,000.00) and, subject to Section 2.2, Assumed Liabilities in an amount equal to Three Million Three Hundred Sixty Two Thousand One Hundred Two Dollars ($3,362,102.00).

      2.1.2    Within ten business days following execution of this Agreement, Buyer shall deposit the sum of Two Hundred Thousand Dollars ($200,000.00) (the **"Deposit"**) with the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A.to be held in the law firm's attorney escrow account, which at Closing shall be applied against the Purchase Price. Seller acknowledges that the Deposit is subject to Seller's performance of the terms and conditions of this Agreement and the other conditions of Closing, as set forth herein.  The Deposit shall be refunded to Buyer if Closing does not occur due to the default of the Seller or the failure of the Closing conditions set forth in Section 4 herein.

      2.1.3    The Purchase Price shall be paid in full at Closing.

      2.2    <u>Assumed Liabilities</u>.  Buyer shall, effective as of the Closing Date, be assigned Seller's interest under the Real Property Leases and Other Leases and Contracts (specifically excluding the Excluded Contracts) to be assigned by Seller under this Agreement and shall assume all then existing liabilities and obligations of Seller described on **Schedule 2.2**, including (i) for cure payments payable to counter-parties thereto in connection with the assumption and assignment of the Real Property Leases and Other Leases and Contracts in accordance with the Approval Order (as defined in Section 7(a) below), (ii) accruing under the Real Property Leases and under the Other Leases and Contracts on and after the Closing Date, and (iii) subject to the other provisions of this Agreement, with respect to orders for which customer deposits were accepted in the ordinary course of business and which have not been fulfilled or cancelled on or prior to the Closing Date, the obligation to deliver such product in fulfillment of such orders.  For the avoidance of doubt, Buyer is not assuming any liability with respect to the cancellation of any such order either prior to, on or after the Closing Date.

2.3    <u>Purchase Price Allocation</u>.  Not later than thirty (30) days after the Closing Date, Buyer shall prepare and deliver to Seller a schedule (the **"Allocation Schedule"**) allocating the Purchase Price among the various assets comprising the Property.  Buyer and Seller shall report and file all tax returns (including any amended tax returns and claims for refund) consistent with such mutually agreed Purchase Price allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any taxing authority or any other proceedings).  Buyer and Seller shall file or cause to be filed any and all forms (including U.S. Internal Revenue Service Form 8594), statements and schedules with respect to such allocation, including any required amendments to such forms.

3.    <u>Closing Transactions</u>.

3.1    <u>Closing</u>.  The Closing of the transactions provided for herein (the **"Closing"**) shall take place at Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 11921 Rockville Pike, Rockville, Maryland  20852.

3.2    <u>Closing Date</u>.  The Closing shall be held no later than five (5) business days following the entry of a final non-appealable Approval Order or, provided such Order shall not have been stayed, such other earlier time in the sole discretion of the Buyer, (the **"Closing Date"**).

3.3    <u>Seller's Deliveries to Buyer at Closing</u>.  On the Closing Date, Seller shall make the following deliveries to Buyer:

3.3.1    An Assignment and Assumption of Leases and Contracts substantially in the form attached as **Exhibit "A"** hereto, duly executed by Seller pursuant to which Seller shall assign to Buyer its interest, if any, in the Real Property Leases and Other Leases and Contracts and the Leasehold Improvements (the **"Assignment of Leases"**).

3.3.2    A bill of sale, duly executed by Seller substantially in the form attached hereto as **Exhibit "B,"** pursuant to which Seller shall transfer its right, title and interest in and to the Personal Property and the Inventory to Buyer (the **"Bill of Sale"**).

3.3.3    An assignment of Intangible Property, duly executed by Seller, substantially in the form of the assignment attached as **Exhibit "C"** hereto, pursuant to which Seller shall assign to Buyer its interest, if any, in and to the Intangible Property (the **"Assignment of Intangible Property"**).

3.3.4    Such other instruments of transfer as may result in the request by Buyer.

3.4    <u>Buyer's Deliveries to Seller at Closing</u>.  On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

3.4.1    That portion of the Purchase Price to be delivered by Buyer at the Closing under Section 2.1.

3.4.2    A counterpart of the Assignment of Leases, duly executed by Buyer.

3.5    <u>Sales, Use and Other Taxes</u>.  Any sales, purchases, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Property is located, or any subdivision of any such state, which may be payable by reason of the sale of the Property under this Agreement or the transactions contemplated herein shall be borne and timely paid by Seller.

3.6    <u>Adjustments.</u>  Rents, real estate taxes, and operating expenses of the Seller shall be adjusted and apportioned and credited on an annual basis as of the Closing Date.  If any errors or omissions are made regarding adjustments and prorations, the parties shall make the appropriate correction promptly when accurate information becomes available.  Any corrected adjustment or proration shall be paid in cash to the appropriate party within ten (10) business days of the correction or adjustment.  Any right to a correction or adjustment as expressed in this Section 3.6 shall terminate six (6) months after the Closing Date.

3.7    <u>Possession</u>.  Right to possession of the Property shall transfer to Buyer on the Closing Date.

4.    <u>Conditions Precedent to Closing.</u>

4.1    <u>Conditions to Seller's Obligations</u>.  Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transactions contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1    Buyer shall have executed and delivered to Seller the Assignment of Leases.

4.1.2    Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, the portion of the Purchase Price and other documents required of Buyer to be delivered at the Closing.

4.1.3    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.4    The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with Sections 7(a) and 7(b) below and the Approval Order shall not have been stayed as of the Closing Date.

4.2    <u>Conditions to Buyer's Obligations</u>.  Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated

herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

        4.2.1      All of the representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

        4.2.2      Seller shall have executed and delivered to Buyer the Assignment of Leases and Contracts, the Bill of Sale, and the Assignment of Intangible Property.

        4.2.3      Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

        4.2.4      No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking to restrain or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

        4.2.5      The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with Sections 7(a) and 7(b) below and the Approval Order shall not have been stayed as of the Closing Date.

        4.3    <u>Termination</u>.  The right to terminate this Agreement shall only be permitted (i) if the Bankruptcy Court refuses to issue the Approval Order; (ii) by mutual written consent of Seller and Buyer; (iii) by the non-breaching party after a breach by the breaching party of any agreements, covenants, representations or warranties contained herein; or (iv) if the Closing shall not have occurred by the close of business on May 29, 2015.  Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; <u>provided</u>, <u>however</u>, that the consent of either party hereto to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date.

    5.      <u>Seller's Representations and Warranties.</u>

        5.1    <u>Representations and Warranties of Seller</u>.  Seller hereby represents and warrants to Buyer that the statements contained in this Article 5 are true, correct and complete as of the date of this Agreement and as of the Closing Date.

        5.2    <u>Good Standing and Authority</u>. Seller is a corporation organized, validly existing and in good standing under the laws of the state of its organization.  Seller (i) has all requisite corporate or entity power and authority to own its properties and assets and to carry on its business as now being conducted, subject to any required Bankruptcy Court approval and (ii) has all requisite power and authority (A) to execute, deliver and perform its obligations under this Agreement and all documents contemplated by this Agreement (the "**Attendant Documents**") to which Seller is a party, and the consummation of the transactions contemplated hereby and thereby, and (B) subject to approval of the Approval Order, has been duly authorized and approved by all necessary and proper corporate action on the part of Seller to consummate the transactions contemplated hereby.  This Agreement, and all of the Attendant Documents to

which Seller is a party, have been (or to the extent to be entered into on or prior to the Closing, will be) duly and validly executed and delivered, and constitute legal, valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms, subject to approval and entry of the Approval Order.

5.3     Assets. Other than the Excluded Assets, there are no assets (including without limitation any intellectual property) used in or necessary to the operation of the Business which are not included in the Property to be transferred to Buyer on the Closing Date and Seller does not conduct the Business through any other person or entity.  Upon consummation of the transactions contemplated hereby and pursuant to the entry of the Approval Order, Buyer will have acquired good and marketable title in and to, or a valid leasehold interest in or assignment of Seller's rights in and to all of the Property to be acquired by it, free and clear of all liens, claims, interests and encumbrances, except for Assumed Liabilities.

5.4     Survival of Representations and Warranties.  The representations and warranties of Seller and Buyer contained in this Agreement shall survive until the Closing Date and shall then expire.

6.     "AS IS" TRANSACTION.  BUYER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PROPERTY EXCEPT AS PROVIDED HEREIN.  WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY (EXPRESS OR IMPLIED) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE AS TO ANY PORTION OF THE PROPERTY.  BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL PORTIONS THE PROPERTY AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PROPERTY AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE PROPERTY, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.  ACCORDINGLY, EXCEPT ONLY FOR THOSE REPRESENTATIONS AND WARRANTIES SET FORTH HEREIN, BUYER WILL ACCEPT THE PROPERTY AT THE CLOSING **"AS IS, "WHERE IS," AND "WITH ALL FAULTS."**

7.     Bankruptcy Court Approvals.

(a)     Promptly following the Execution Date (and in no event later than April 8, 2015), Seller will make a motion (the **"Sale Motion"**) for an order (the **"Approval Order"**) from the Bankruptcy Court which (i) approves the sale of the Property to Buyer on the terms and conditions set forth in this Agreement and authorizes the Seller to proceed with this transaction, (ii) includes a specific finding that buyer is a good faith Buyer of the Property, and (iii) states that the sale of the Property to Buyer shall be free and clear of all liens, claims, interests and encumbrances whatsoever.  Following the filing of the Sale Motion, Seller shall use its best efforts to obtain the Approval Order.  Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement which the Buyer and Seller may hereafter enter into shall be conditioned upon the Bankruptcy Court's entry of the Approval

Order.  If the Bankruptcy Court refuses to issue the Approval Order or to approve any third party buyer at the hearing on the Sale Motion (the **"Sale Hearing"),** then this transaction shall automatically terminate and the Seller and the Buyer shall be relieved of any further liability or obligation hereunder.

(b)      At the same time the Sale Motion is filed, Seller shall also request and use its best efforts to obtain from the Bankruptcy Court an order (the **"Procedures Order"**) which approves the following bidding procedures (the **"Bidding Procedures"**): (i) Buyer will conduct an auction (the "**Auction**") if Buyer receives other Qualified Bids (as defined in the Bidding Procedures); (ii) all third-party offers to be considered at the Auction shall be in writing and delivered to the Seller (and a copy delivered by the Seller to Buyer) no later than three (3) business days prior to the Auction, together with satisfactory evidence of such third party's financial ability to perform its obligations under such offer, (iii) no prospective buyer will be permitted to bid at the Auction unless such party has been deemed "financially qualified" by the Seller, (iv) no prospective buyer who bids for the Property at the Auction shall be entitled to bid at the Auction unless such prospective Buyer makes a good faith deposit into escrow of $200,000.00 and such prospective Buyer offers to purchase the Property for consideration at least $100,000 greater than the consideration set forth in this Agreement (including all cash consideration and Assumed Liabilities) and otherwise on terms at least as favorable to the Seller as those set forth in this Agreement, and (v) after any initial overbid, all further overbids (which, if Seller so allows, consist of a cumulation of one or more separate bids) must be in increments of at least $50,000 and Seller shall, in Seller's discretion, have determined that such overbids satisfy such bidding increment requirement.  Should overbidding take place, the Buyer shall have the right, but not the obligation, to participate in the overbidding and to be approved as an overbidder at the hearing on the Sale Motion based upon any such overbid.  At Buyer's option, Buyer's obligations under this Agreement shall terminate if the Procedures Order is for any reason whatsoever not entered by the Bankruptcy Court on or before April 20, 2015, or if the Closing hereunder has not been consummated on or before May 29, 2015.

8.      Employee Matters; Leases; Conduct of Business.

(a)      Buyer shall offer employment, commencing on the Closing Date, to those employees of Seller designated by Buyer by written notice to Seller 48 hours prior to the Bankruptcy Auction.  Those employees under to whom offers of employment are made and who commence employment as of the Closing Date or such other applicable date shall be collectively referred to as the **"Transferred Employees**."

(b)      Between the date hereof and the Closing Date, Seller shall conduct the Business at the Leased Real Property in the ordinary course on a basis consistent with past practices and shall use its best efforts to preserve intact the Business, including retaining employees, continuing efforts to dispose of Inventory at reasonably normal margins and promptly paying when due all post-petition obligations under the Real Property Leases.  Without limiting the generality of the foregoing, between the date hereof and the Closing Date, unless otherwise agreed by Buyer, Seller shall (i) accept customer returns in the ordinary course of Seller's business; (ii) accept customer deposits, whether or not the items are in Inventory; and (iii) exercise best efforts to fulfill customer orders and operate the Business consistent with past practices.

       (c)     The Seller has complied in all material respects with all applicable laws relating to the privacy of, and the collection, use, storage and disclosure of personal information. To the knowledge of the Seller, there has been no unauthorized access to, unauthorized disclosure of, or other misuse of any personal information collected by the Seller. To the knowledge of Seller, the Seller has not experienced any material breach of security or other unauthorized access by third parties to personal information, and Seller has not received any complaints regarding the collection, use or disclosure of personal information. The execution, delivery and performance of this Agreement will comply with all laws and regulations relating to privacy and with the privacy policy of the Seller and Buyer shall, in all respects, comply with Seller's privacy policy.

9.    <u>Miscellaneous</u>.

      9.1    <u>Attorneys' Fees</u>. If either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

      9.2    <u>Entire Agreement</u>. This Agreement and the documents to be executed pursuant hereto contain the entire agreement between the parties relating to the sale of the Property. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

      9.3    <u>Notices</u>. Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as of the date of mailing. Mailed notices shall be addressed as set forth below, but each Party may change its address by written notice in accordance with this Section 9.3.

      To Seller:         The Healthy Back Store, LLC
                            10300 Southard Drive
                            Beltsville, Maryland  20705
                            Attn.: Anthony Mazlish

      With a copy to:     Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
                            12505 Park Potomac Avenue, Sixth Floor
                            Potomac, Maryland 20854
                            Attn:  Michael J. Lichtenstein

      To Buyer:         Healthy Back Brand Holdings, LLC
                            10835 E. Mountain Spring Road
                            Scottsdale, AZ 85259
                            Attn.: Richard Williamson

With a copy to:        McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
Attn: James M. Greenan or Steven Goldberg

      9.4    <u>Modification</u>. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto.

      9.5    <u>Closing Date</u>. All actions to be taken on the Closing Date pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

      9.6    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

      9.7    <u>Captions</u>. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

      9.8    <u>Waiver</u>. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

      9.9    <u>Payment of Fees and Expenses</u>. Except as provided in Section 9.1 above, each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

      9.10    <u>Counterparts</u>. This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of facsimile signature pages.

      9.11    <u>Bankruptcy Court Jurisdiction</u>. THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT. SUCH COURT SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENTS AND SUBMITS TO SUCH JURISDICTION.

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**SELLER:**

**THE HEALTHY BACK STORE, LLC**

By: _____

Name: Anthony A. Mazlish
Its:  CEO

**BUYER:**

**HEALTHY BACK BRAND HOLDINGS, LLC**

By: _____

Name: Richard Williamson
Its:

11

IN WITNESS WHEREOF, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

SELLER:

THE HEALTHY BACK STORE, LLC

By: _____
      Name: Anthony A. Mazlish
      Its:


BUYER:

HEALTHY BACK BRAND HOLDINGS, LLC

By: _____
      Name: Richard Williamson
      Its: VICE PRESIDENT

11

Exhibit "A"

## ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

This Assignment and Assumption of Leases and Contracts (this **"Assignment"**) is entered into as of this 31st day of March , 2015, among The Healthy Back Store, LLC, a Debtor and Debtor in Possession under Case No. _____ in the Bankruptcy Court for the District of Maryland (collectively, the **"Assignor"**), on the one hand, and Healthy Back Brand Holdings, LLC (the **"Assignee"**), on the other hand, with respect to the following facts and circumstances:

A.      Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated March __, 2015 (the **"Purchase Agreement"**).  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

B.      Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Purchase Agreement.  Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to Sections 3.3.1 and 3.4.2 of the Purchase Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1.      Assignment.  Effective as of the Closing Date, the Assignor hereby assigns to Assignee all of its right, title and interest in and to the Real Property Leases and Other Contracts and Leases described on **Exhibit "A"** attached hereto and incorporated herein by this reference (collectively, the **"Assigned Contracts"**), and all Leasehold Improvements relating to the Leased Real Property.

2.      Assumption.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assigned Contracts and to faithfully perform all of Assignor's obligations thereunder to be performed from and after the Closing Date as though Assignee had been the original contracting party thereunder, including cure costs in connection therewith to the extent provided in the Purchase Agreement.

3.      Amendments.  This Assignment may only be amended by a writing signed by both Assignor and Assignee.

4.      Execution in Counterparts.  This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the parties exchange facsimile signatures, each of them agrees to provide the other with a copy of this Assignment bearing their original signature as soon thereafter as possible.

5.    <u>Delivery Pursuant to Purchase Agreement</u>.  Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement.

6.    <u>Governing Law</u>.  This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Maryland.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

<u>**ASSIGNOR:**</u>

**THE HEALTHY BACK STORE, LLC**
Debtor and Debtor in Possession

By: _____
       **Name:** Anthony A. Mazlish
       **Its:**  CEO

<u>**ASSIGNEE:**</u>

**HEALTHY BACK BRAND HOLDINGS, LLC**

By: _____
       **Name:** Richard Williamson
       **Its:**

5.      Delivery Pursuant to Purchase Agreement. Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement.

6.      Governing Law. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Maryland.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

ASSIGNOR:

THE HEALTHY BACK STORE, LLC
Debtor and Debtor in Possession

By: _____
        Name: Anthony A. Mazlish
        Its:

ASSIGNEE:

HEALTHY BACK BRAND HOLDINGS, LLC

By: _____
        Name: Richard Williamson
        Its:  VICE PRESIDENT

## Exhibit "B"

## BILL OF SALE

Pursuant to that certain Asset Purchase Agreement dated as of March __, 2015 (the **"Purchase Agreement"**), by and between Healthy Back Brand Holdings, LLC (the **"Buyer"**), on the one hand, and The Healthy Back Store, LLC, Debtor and Debtor in Possession under Case No. _____ in the Bankruptcy Court for the District of Maryland (the **"Seller"**), on the other hand, and for good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, Seller hereby sells, transfers, assigns and delivers to Buyer all of its right, title and interest in and to the Property, free and clear of all liens, claims, interests and encumbrances, except for Assumed Liabilities.

Except for terms specifically defined in this Bill of Sale, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Purchase Agreement.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale in accordance with and subject to all of the terms and provisions of the Purchase Agreement, including without limitation **Section 6** thereof.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed as of the _____ day of _____, 2015.

**SELLER:**

**THE HEALTHY BACK STORE, LLC**
Debtor and Debtor in Possession

By: _____
        Name: Anthony A. Mazlish
        Its:

**Exhibit "C"**

**ASSIGNMENT OF INTANGIBLE PROPERTY**

The Healthy Back Store, LLC, Debtor and Debtor in Possession under Case No. \_\_\_\_\_ in the Bankruptcy Court for the District of Maryland (collectively, the **"Assignor"**) is executing this Assignment of Intangible Property (the **"Assignment"**) in favor of Healthy Back Brand Holdings, LLC, a Delaware limited liability company (the **"Assignee"**), with respect to the following facts and circumstances:

(A)     Assignor and Assignee have heretofore entered into that certain Asset Purchase Agreement dated March \_\_, 2015 (the **"Purchase Agreement"**).  Except for terms specifically defined in this Assignment, the capitalized terms used in this Assignment shall have the same meanings as such terms when used in the Purchase Agreement.

(B)     Concurrently with the execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Purchase Agreement.  Pursuant to the Purchase Agreement, Assignor is required to execute and deliver this Assignment at the Closing.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which Assignor hereby expressly acknowledges, Assignor hereby assigns, conveys, transfers and sets over unto Assignee, all of its right, title and interest, if any, in and to all (i) Intangible Property, including, but not limited to, its right, title and interest, if any, in and to the Intangible Property identified on Schedule 1 attached hereto and incorporated herein by this reference, and (ii) Governmental Permits. This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignee.

Notwithstanding anything to the contrary herein, Assignor is executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement.

This Assignment shall be governed by and construed and enforced in accordance with the laws of Maryland.

**IN WITNESS WHEREOF**, Assignor has executed this Assignment as of the \_\_\_ of _____, 2015.

**ASSIGNOR:**

**THE HEALTHY BACK STORE, LLC**
Debtor and Debtor in Possession

By:    _____
        Name: Anthony A. Mazlish
        Its:

# SCHEDULE 1

The Healthy Back Store, LLC
Intangible Property

1. Trade names, including "Healthy Back" or "Healthy Back Store";
2. Telephone numbers;
3. Website, Web site add-ons, and website address/URL;
4. Patents, service marks trademarks, including the following pending and/or registered trademarks: Serial numbers 85702977; 85702976; 75141517; 74455872; 86491431; 86505710;
5. Customer lists and database;
6. Catalogues;
7. Advertising materials;
8. Software programs; and
9. Goodwill

# SCHEDULE A

The Healthy Back Store, LLC
Retail Store Listing as of Petition Date

| Store No. | Address | City | State | Zip | Sq. Ft |
|---|---|---|---|---|---|
| 1 | 1701-A5 Rockville Pike | Rockville | MD | 20852 | 3,378 |
| 2 | 8150 Leesburg Pike | Vienna | VA | 22182 | 3,153 |
| 6 | 1201 University Ave | San Diego | CA | 92013 | 4,300 |
| 11 | 161 Lexington Green, B-30 | Lexington | KY | 40503 | 3,950 |
| 14 | 6831 Wisconsin Ave | Bethesda | MD | 20815 | 6,500 |
| 15 | 1403-C Encinitas Blvd | Encinitas | CA | 92024 | 3,000 |
| 16 | 8657 Villa La Jolla Dr., #207 | La Jolla | CA | 92037 | 1,667 |
| 18 | 11058 Lee Highway | Fairfax | VA | 22030 | 2,760 |
| 19 | 3218 Duke Street | Alexandria | VA | 22314 | 2,430 |
| 21 | 3440 Del Lago Blvd. Ste. O | Escondido | CA | 92029 | 2,270 |
| 40 | 6181 Old Dobbin Lane, Ste. 400 | Columbia | MD | 21045 | 3,199 |
| 900* | 10300 Southard Drive | Beltsville | MD | 20705 | 14,629 |
| 901** | 9369 Dowdy Drive, Suite F | San Diego | CA | 92126 | 5,093 |
| 906*** | 1601 E. Geer Street, Unit B5 | Durham | NC | 27704 | 3,255 |

\*     Store 900 is corporate and warehouse site in Maryland

\*\*    Store 901 is warehouse site in California.

\*\*\*   Store 906 is warehouse site in North Carolina

# SCHEDULE 1.1.1

The Healthy Back Store, LLC
Real Property Leases to be assumed by Buyer

| Store No. | Address | City | State | Zip | Sq. Ft |
|---|---|---|---|---|---|
| 1 * | 1701-A5 Rockville Pike | Rockville | MD | 20852 | 3,378 |
| 2 * | 8150 Leesburg Pike | Vienna | VA | 22182 | 3,153 |
| 6 | 1201 University Ave | San Diego | CA | 92013 | 4,300 |
| 11 | 161 Lexington Green, B-30 | Lexington | KY | 40503 | 3,950 |
| 14 | 6831 Wisconsin Ave | Bethesda | MD | 20815 | 6,500 |
| 15 * | 1403-C Encinitas Blvd | Encinitas | CA | 92024 | 3,000 |
| 16 | 8657 Villa La Jolla Dr., #207 | La Jolla | CA | 92037 | 1,667 |
| 18 | 11058 Lee Highway | Fairfax | VA | 22030 | 2,760 |
| 19 | 3218 Duke Street | Alexandria | VA | 22314 | 2,430 |
| 40 | 6181 Old Dobbin Lane, Ste. 400 | Columbia | MD | 21045 | 3,199 |
| 900 | 10300 Southard Drive | Beltsville | MD | 20705 | 14,629 |
| 901 | 9369 Dowdy Drive, Suite F | San Diego | CA | 92126 | 5,093 |

* Store Nos. 1, 2 and 15 are leased by The Healthy Back Store, Inc., as lessee.  The Buyer is responsible for negotiating an assignment or sublease of these store leases.

# SCHEDULE 1.1.2

The Healthy Back Store, LLC
Other Leases and Contracts to be assumed by Buyer

| Lease/Contract | Nature of Contract |
|---|---|
| Penske Truck Leasing Co. LLC | Vehicle Lease Service Agreement |
| Storis, Inc. | Annual Licensing Fee for POS Operating System |
| iCore Solutions | Internet VOIP & Cloud Technology (subject to modification of agreement) |
| ASG Security | Security/Alarm Services |
| Littleton, CO Store Agreement | Note from Colorado Store |
| Svago | Manufacturing Agreement |
| Sage Payment Solutions | Payment Processing |
| Synchrony Financing | Merchant Services Agreement |
| KBPS | Radio Advertising Contract |
| Comcast | Internet Lines |

# SCHEDULE 2.2

The Healthy Back Store, LLC
Liabilities to be assumed by Buyer

| Creditor | Balance |
| --- | --- |
| **Non-Merchandise Vendors** | |
| Customer Deposits* | $825,836 |
| Echo Global | $21,597 |
| Mazwill Partners, LLC | $868,613 |
| **Merchandise Vendors**** | |
| Bliss | $87,221 |
| Cozzia/Svago Mnf. | $68,221 |
| FIUS/Pos Po | $380,000 |
| Golden | $42,670 |
| Haworth | $64,927 |
| Herman Miller | $76,007 |
| Human Touch | $53,237 |
| Jobri | $36,808 |
| Leggett & Platt | $40,041 |
| McCartys | $64,128 |
| Nightingale | $65,750 |
| Steelcase | $32,716 |
| Technogel | $161,519 |
| Tempur | $472,811 |
| **Total** | **$3,362,102** |

\* amount may change based on new, filled or cancelled customer deposits through Closing

 \*\* amounts stated may change pending accounts payable reconciliation with vendors