Entered: April 24, 2015
Signed: April 23, 2015

SO ORDERED



**WENDELIN I. LIPP**
**U. S. BANKRUPTCY JUDGE**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **THE HEALTHY BACK STORE, LLC** | ) | **Case No. 15-14653 WIL** |
| | ) | **(Chapter 11)** |
| **Debtor** | ) | |

### INTERIM ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO
### OBTAIN FINANCING, GRANT SECURITY INTERESTS AND ACCORD
### <u>PRIORITY STATUS PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d)</u>

This matter is before the court on the Second Motion (the "Motion") of The Healthy Back Store, LLC, a Delaware limited liability company, as debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), requesting entry of an order (1) authorizing Debtor to obtain financing and other extensions of credit from Healthy Back Brand Holdings, LLC, and its successors and assigns, in the capacity as post-petition lender (the "DIP Lender"), grant security interests and liens and accord super-priority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code"); and (2) giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).

The Court conducted a preliminary hearing (the "Interim Hearing") on the Motion and is entering this Interim Order (the "Interim Order") approving the financing requested in the Motion, pending a final hearing on the Motion.

Based upon the arguments of counsel and evidence presented at the initial hearing, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by Debtor from the DIP Lender (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS AND DETERMINES:

A.    On April 1, 2015 (the "Petition Date"), Debtor filed with this court its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

B.    The Debtor sells ergonomic mattresses, adjustable beds, office, lounge and massage chairs, seat lift chairs, comfort accessories and other furniture.

C.    An immediate and ongoing need exists for Debtor to obtain financing to continue the operation of its business as a debtor-in-possession under Chapter 11 of the Bankruptcy Code, to avoid irreparable damage, to minimize the disruption of Debtor's business and to allow the Debtor to commence an orderly wind-down of its business.  Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from DIP Lender pursuant to the DIP Credit

Agreement (as hereinafter defined), it is unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estates pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

D.     Debtor has requested DIP Lender to establish a secured lending facility in favor of Debtor (the "DIP Facility") pursuant to which Debtor may obtain loans from time to time  ("DIP Loans") in an aggregate amount up to $400,000.00 outstanding at any time.

E.     DIP Lender is willing to establish the DIP Facility, upon the terms and conditions set forth herein and in that certain Post-Petition Loan and Security Agreement entered into by Debtor and DIP Lender following the entry of the Interim Order (the "DIP Credit Agreement"). DIP Lender's willingness to make DIP Loans and other extensions of credit (collectively, the "*Credit Extensions*") is conditioned upon, among other things, Debtor obtaining Court authority to provide adequate protection to DIP Lender's interest in the DIP Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code.

F.     A condition to the willingness of DIP Lender to establish the DIP Facility is that, as security for the prompt payment of all DIP Loans, all interest, fees, expenses and the charges at any time payable by Debtor under the DIP Credit Agreement, DIP Lender receive a security interest in and lien upon all of Debtor's pre-petition and post-petition assets (real and personal), including, without limitation, all of Debtor's cash, accounts, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, leasehold interests, and books and records relating to any assets of  Debtor and all proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located (all such

real and personal property, and the proceeds thereof, being collectively hereinafter referred to as the "Collateral"), and that such liens have the priority hereinafter set forth, subject only to the liens in favor of Mazwill Partners, LLC (the "Secured Lender").

G.      Debtor has represented and warranted that there are no security interests in liens upon any of the Collateral, other than "Permitted Liens" (as defined in the DIP Credit Agreement).

H.      Simultaneously with the filing of the initial DIP Motion, Debtor also filed a motion to sell substantially all of the Debtor's assets.

I.      Debtor requested in the Motion, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), that the Court authorize Debtor to (i) obtain DIP Loans for purposes specified in the Debtor's cash flow forecast and in such subsequent monthly cash flow forecasts as may be agreed to by the DIP Lender (the "Lender") and Debtor under the terms of the DIP Financing Agreement (the forecast in effect at any time, the "Budget," a copy of which is attached to this Order).

J.      Debtor has certified that copies of the Interim Order (together with copies of the proposed DIP Credit Agreement), and notice of the Interim Hearing was served by electronic mail or first class United States mail upon the United States Trustee (the "U.S. Trustee"), counsel for the secured lender, the 20 largest unsecured creditors of the Debtor and parties requesting notice.  The Court finds that notice of the Motion and the Interim Hearing, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c).

4

K.     Good cause has been shown for the entry of this Order and authorization for Debtor to obtain Credit Extensions pursuant to the DIP Credit Agreement.  Debtor's need for financing of the type afforded by the DIP Credit Agreement is immediate and critical.  Entry of this Order will minimize disruption of Debtor's businesses and operations, will preserve the assets of Debtor's estate and is in the best interests of Debtor, its creditors and its estate.  The terms of the proposed financing appears fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

L.     Based upon the record presented at the Interim Hearing, it appears that the DIP Credit Agreement and this Interim Order have been negotiated in good faith and at arm's length between Debtor, on the one hand, and Lender, on the other.  Therefore, all Credit Extensions to Debtor pursuant to the DIP Credit Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

M.     This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.     <u>Grant of Motion; Authorization of Financing</u>.  The Motion is hereby granted and Debtor's execution and delivery of the DIP Credit Agreement and all instruments, security agreements, assignments, pledges, mortgages and other documents referred to therein or requested by DIP Lender to give effect to the terms thereof (the DIP Credit Agreement and such other instruments, security agreements, assignments and other documents, as at any time

5

amended, being collectively called the "DIP Financing Documents") is hereby ratified, affirmed and approved; and Debtor is hereby authorized and directed to execute and deliver to DIP Lender that certain Post-Petition Loan and Security Agreement and any other documents as requested by DIP Lender.  All documents and instruments that have been so executed and delivered prior to the date hereof are hereby ratified and affirmed.  Debtor is authorized to obtain DIP Loans and other Credit Extensions in accordance with the DIP Credit Agreement from time to time up to an aggregate principal amount outstanding at any time not to exceed $150,000.00 at this time, and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, expenses and other obligations provided for under the DIP Financing Documents, and to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  Debtor may obtain Credit Extensions (a) to pay the fees and expenses due and amounts owing by Debtor at any time (b) for purposes specified (and in amounts not to exceed those shown) in the Budget, (c) to make payments pursuant to "first day" orders reviewed and approved by the Court and the DIP Lender, and (d) to pay other expenses that are authorized to be paid under the DIP Credit Agreement.

2.    Execution and Delivery of DIP Financing Documents.    The DIP Financing Documents shall constitute valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms.  In furtherance of the provisions of paragraph 1 of this Order, Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be

necessary or, in the opinion of DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing Documents.

3.    <u>DIP Liens</u>.    Subject to the provisions of Section 8(b), all Credit Extensions, together with all interest, fees and other charges (including, without limitation, reasonable legal fees) at any time or times payable by Debtor to DIP Lender in connection therewith or otherwise pursuant to the DIP Financing Documents (all such Credit Extensions, interest fees and other charges, including any "Obligations" as such term is defined in the DIP Credit Agreement, are collectively called the "DIP Obligations") shall be, and hereby are, secured by security interests and liens in favor of  DIP Lender with respect to all of the Collateral, as follows:

(a)    pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to other valid, perfected and non-avoidable liens or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code; and

(b)    pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by Section 546(b) of the Bankruptcy Code.

All of the security interests and liens referred to above and those granted and conveyed pursuant to the DIP Financing Documents are referred to in this Order as "DIP Liens." Notwithstanding (i) the foregoing provisions of this paragraph 3 or anything to the contrary in the DIP Financing Documents, the DIP Liens and Pre-Petition Liens shall not attach to any of the following property (unless any Debtor shall grant or consent to any lien or security interest therein in favor of any other party, in which event all such property shall be subject to the DIP Liens referred to in subparagraph (a) of this paragraph 3): (x) any claims pursuant to Sections 502(d), 544 (including claims under applicable nonbankruptcy law that may be asserted thereunder), 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code ("Avoidance Claims"), or (y) any proceeds or property recovered in connection with the successful prosecution or settlement of Avoidance Claims ("Avoidance Proceeds").

4.      <u>Superpriority Claim; Surcharge</u>.  Subject to the provisions of Section 8(b), all DIP Obligations shall have administrative priority in accordance with, and shall constitute an allowed superpriority claim (the "Superpriority Claim") pursuant to, Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in Debtor's cases of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 726 or 1114 of the Bankruptcy Code.  DIP Lender shall not seek to assert its Superpriority Claim under Section 364(c)(1) to any Avoidance Proceeds, but shall be entitled to assert as a general unsecured claim under Section 502(a) of the Bankruptcy Code ratably with other claimants holding claims to the extent of any deficiency in repayment of the DIP Obligations after disposition of the Collateral and the delivery of the proceeds therefrom to the DIP Lender.

8

5.    Repayment.   The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim.   In no event shall Debtor be authorized to offset or recoup any amounts owed, or alleged owed, by DIP Lender to Debtor against any of the DIP Obligations unless and to the extent expressly otherwise agreed to in writing by DIP Lender.   The DIP Lender has agreed that, if it is the successful purchaser of the Debtor's assets, any advances made under the DIP Financing Documents shall be repaid only from the Debtor's operating funds.

6.    Carve-Out.

(a)    As used herein, "Professional Expenses" shall mean, collectively, compensation and expense reimbursement of (i) professionals (including attorneys, accountants, appraisers, consultants and investment bankers) retained by Debtor (the "Debtor Professionals"), (ii) professionals (including attorneys, accountants, appraisers, consultants and investment bankers) retained by each statutory committee (each, a "Committee") appointed in this Chapter 11 case (the "Committee Professionals"; the Debtor Professionals and the Committee Professionals being hereinafter referred to collectively as "Professional Persons"), and (iii) the reasonable out-of-pocket expenses (other than fees paid to legal counsel or other professionals) of members of each Committee ("Committee Expenses"), in each case only to the extent that such compensation and expense reimbursement is approved by the Court.

(b)    The DIP Liens and Superpriority Claim conferred upon DIP Lender, and all liens in favor of the Pre-Petition Lender, shall be subject and subordinate to the payment, of the following (to the extent that there are not sufficient, unencumbered funds in Debtor's estate (and, in the case of Debtor's professionals, in the retainer paid to it by Debtor before the Petition

Date) to pay such amounts at the time payment is required to be made): (i) Professional Expenses that are approved for payment by final order of the Court and do not exceed $100,000.00; (ii) fees required to be paid to the Clerk of the Court; and (iii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i), (ii) and (iii) are collectively called the "Carve-Out"); provided, however, that no proceeds of DIP Loans or any of the Collateral and no amounts received pursuant to the Carve-Out shall be used to pay Professional Expenses of any Professional Person or any other costs incurred in connection with (1) commencing or continuing any claims, causes of actions or contested matters of any nature against any of the DIP Lender, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by DIP Lender of its rights or remedies under this Order or any of the DIP Financing Documents; (3) challenging the DIP Liens or Superpriority Claim of DIP Lender; (4) challenging any of the liens or claims of Pre-Petition Lender; (5) seeking in any motion or proceeding to limit, invalidate or subordinate any of the liens or claims of any of the DIP Lender; or (6) any other action that would prevent, hinder or delay the Borrowers from performance of their obligations and duties under the DIP Financing Documents, *provided, however,* that nothing in this Order shall prohibit the Debtor or, if applicable, a committee, from using the proceeds of the DIP Loan (or, in the case of a committee, its share of the Carve-Out) to pursue any claims and causes of action against the Lender arising out of Lender's (as bidder) breach (as bidder) of the Asset Purchase Agreement or tortious conduct in connection with the sale of the Debtor's assets.

7.     <u>Preservation of Rights Granted Under This Order</u>.  There shall not be entered in this Chapter 11 case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtor (or any trustee or examiner) that is (i) secured by a security, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the DIP Liens or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted to DIP Lender herein; <u>provided</u>, <u>however</u>, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the DIP Obligations must be indefeasibly paid in full, in cash, from the proceeds of such credit or indebtedness.

8.     <u>Automatic Perfection of DIP Liens</u>.  The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order.  DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens.  If DIP Lender shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, Debtor and its officers are directed to execute any documents or instruments as DIP Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.  DIP Lender may, in its discretion, file a certified copy of this Order in any filing office in any jurisdiction in which Debtor are organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles

11

recording or similar tax in accordance with the provisions of Section 1146 of the Bankruptcy Code.

       9.     <u>Events of Default; Remedies</u>.

       (a)     Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Credit Agreement, including, without limitation, an Event of Default resulting from the failure of Debtor duly and punctually to observe, perform or discharge any obligation or duty imposed upon it by this Order or any of the DIP Financing Documents, the appointment in this Chapter 11 case of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, the dismissal or conversion to Chapter 7 of this Chapter 11 case, the filing of a motion by Debtor to convert this case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this case, this Order is altered, amended, vacated, supplemented, modified, supplemented or stayed or reversed on appeal or Debtor shall file any motion to alter, amend, vacate, supplement or modify this Order without DIP Lender's prior consent, relief from stay shall be granted to allow a creditor to foreclose upon any Collateral consisting of accounts or inventory or with respect to any other Collateral having an aggregate book value in excess of $10,000, or a final financing order acceptable to DIP Lender is not entered within 45 days after entry of this Order, then, in any such event, DIP Lender shall be fully authorized, in its sole discretion, to terminate further Credit Extensions under the DIP Facility as provided in the DIP Credit Agreement, to demand payment of all DIP Obligations, to hold any balances in any accounts of Debtor, and, upon five (5) days prior written notice to counsel for Debtor and the U.S. Trustee, to enforce the DIP Liens with respect to the Collateral,

to effect offsets of bank account balances and to take all other action and exercise all other remedies under the DIP Financing Documents and applicable law that may be necessary or deemed appropriate by DIP Lender to collect any of the DIP Obligations, to proceed against or realize upon all or any portion of the Collateral as if this Chapter 11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Financing Documents and this Order.

10.    <u>Service of Order</u>.  Promptly after the entry of this Order, Debtor shall mail, by first class mail, a copy of this Order to counsel for DIP Lender, the U.S. Trustee, the 20 largest unsecured creditors of Debtor at their respective last known addresses, and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court.

11.    <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Order shall be binding upon all parties in interest in this Chapter 11 case, including, without limitation, DIP Lender, and Debtor and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed or elected for the estate of any Debtor or any Chapter 7 trustee appointed in a superseding Chapter 7 case), and shall inure to the benefit of DIP Lender, Debtor and their respective successors and assigns.  In no event shall DIP Lender have any obligation to make Credit Extensions to any Chapter 7 or Chapter 11 trustee appointed or elected for the estates of Debtor.

12.    <u>Inconsistencies</u>.  To the extent that any provisions in the DIP Credit Agreement are inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

**<u>Copies to</u>**:

13

Michael J. Lichtenstein, Esquire
Shulman, Rogers, Gandal,
Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854

Lynn Kohen, Esquire
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

Steven L. Goldberg, Esquire
McNamee Hosea
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770

**END OF ORDER**

## Healthy Back Monthly Cash Flow Forecast

| | Week Ending | | | | | |
|---|---|---|---|---|---|---|
| | 4/25/2015 | 5/2/2015 | 5/9/2015 | 5/16/2015 | 5/23/2015 | 5/30/2015 |
| **Cash On Hand** | **41,654** | **(150,101)** | **(172,797)** | **(243,608)** | **(269,160)** | **(222,161)** |
| **Cash Receipts** | | | | | | |
| Sales | 182,752 | 226,828 | 218,741 | 244,067 | 240,588 | 320,301 |
| **Total Cash Available** | **224,406** | **76,727** | **45,943** | **459** | **(28,572)** | **98,140** |
| **Disbursements** | | | | | | |
| Payroll/ Employee Incentive | 99,362 | - | - | 99,362 | - | 94,716 |
| Advertising | 47,632 | 11,589 | 15,443 | 14,625 | 20,625 | 24,424 |
| Credit Card Processing Fees | - | - | 27,669 | - | - | - |
| Rent | - | 10,513 | 72,394 | 41,028 | - | - |
| Sales Tax | - | - | - | - | 54,587 | 18,196 |
| LOC/CC Int | 1,700 | - | 1,200 | - | 1,700 | - |
| Insurance | 29,310 | - | - | 15,031 | 14,279 | - |
| Logistics | 9,191 | 12,591 | 9,191 | 9,191 | 9,191 | 12,591 |
| IT/Phone/ Internet/ERPSyst | 16,148 | 175 | - | - | 12,148 | 175 |
| Admin/Legal/Accounting Exp | - | - | - | 7,500 | - | - |
| Misc Expenses | 5,250 | 5,250 | 11,248 | 8,250 | 5,250 | 5,250 |
| Cost of Goods Sold | 165,915 | 209,407 | 152,406 | 74,632 | 75,810 | 114,482 |
| **Total Disbursements** | **374,507** | **249,525** | **289,551** | **269,619** | **193,590** | **269,834** |
| **Cash Position** | **(150,101)** | **(172,797)** | **(243,608)** | **(269,160)** | **(222,161)** | **(171,694)** |